UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| BARCLAYS TRUST,<br><br>      Plaintiff,<br><br>  v.<br><br>NATIN PAUL; WORLD CLASS HOLDING COMPANY, LLC; and WORLD CLASS MANAGEMENT COMPANY, LLC,<br><br>      Defendants. | Case No. 20-cv-947<br><br>District Judge Robert Pitman |

**PLAINTIFF BARCLAYS TRUST'S MOTION TO ENFORCE THE COURT'S
JANUARY 13, 2022 ORDER AND TO REQUEST A SHOW CAUSE HEARING**

Plaintiff Barclays Trust (the "Trust") now moves, as follows, to enforce this Court's January 13, 2022 Order and to request a show cause hearing where World Class Holding Company, LLC ("WCHC") and World Class Management Company, LLC ("WCMC") can be found in contempt. In support of this motion, the Trust states as follows:

**BACKGROUND**

1. The current history of this case was recently chronicled for the Court in the Trust's December 31, 2021 Motion to Compel, which the Trust hereby incorporates by reference. *See generally* ECF No. 53.

2. The Trust's Motion to Compel was unopposed and the Court granted the motion on January 13, 2022. *See* ECF No. 55.

3. The January 13 Order provided that "World Class Holding Company, LLC ("WCHC") and World Class Management Company, LLC ("WCMC") SHALL immediately

search for and, within seven (7) days, produce all documents responsive to each of the Requests for Production served by Plaintiff on November 3, 2021." *Id.*

4. The Order also ordered Defendants WCHC and WCMC, and Defendants' counsel, Eric J. Cassidy on behalf of the law firm of Curtis, Mallet-Prevost, Colt & Mosle LLP, to pay the Trust "reasonable expenses incurred in making the motion, including attorney's fees." *Id.*

5. The following day, on January 14, the Trust emailed Mr. Cassidy: (a) informing him that the Trust expected to receive the complete production of documents ordered by the Court on or before January 20, 2022; (b) seeking to identify how Mr. Cassidy wished to proceed with the Court's sanction award in favor of the Trust; (c) rescheduling the two Rule 30(b)(6) depositions, which had been postponed at Mr. Cassidy's request, for January 25, 2022; (d) explaining the current value of the entered judgment in consideration of post-judgment interest; and (e) requesting Mr. Cassidy's position on the court-ordered sale of property located at 99 Trinity Street. *See* Exhibit A, 1/14/22 Email from Haray to Cassidy.

6. Mr. Cassidy did not respond to the Trust's January 14 email.

7. In direct violation of the Court's January 13 Order, Defendants WCHC and WCMC produced no documents on January 20, 2022.

8. Instead, on January 20, Mr. Cassidy emailed the Trust at 10:30 p.m. CT stating: "I've received documents from the client. I'll touch base in the morning." *See* Exhibit B, Email from Cassidy to Haray.

9. The next day, on January 21, Defendants WCHC and WCMC produced one document (an appraisal of a single property) through counsel.[1]

---

[1] This document is not being attached hereto as it was designated "Confidential." At the Court's request, the Trust can provide a copy of the document for the Court's review *in camera*.

10. This production is facially deficient and is therefore in violation of the Court's January 13 Order.

11. As stated previously in the Trust's Motion to Compel—that Defendants did not oppose—Defendant Natin Paul testified at his deposition that documents existed that have yet to be produced. For example, bank records and financial statements. *See* ECF No. 53.

12. Public filings in other matters concerning Defendant Natin Paul and World Class-related entities further confirm the existence of detailed financial information within Defendant Paul's enterprise. For example, in *GVS Texas Holdings I, LLC v. U.S. Trustee*, No. 21-31121 (Bankr. N.D. Tex.), recent filings include an email from earlier this month where Defendant Paul explained that he can "report on revenue for the properties, there is a custom report you can have run that can be exported to Excel." Exhibit C. In the same email chain, Defendant Paul included a screenshot of the existing software, which clearly showed that Defendant Paul has access to a wide variety of property-level financial information at the tip of his fingers. This includes information concerning, among many other things, "Gross Operating Income," "Deposits," and "Accounts Receivables."

13. Despite Defendants apparent access to the information requested by the Trust and ordered to be produced by the Court, no such information has been produced. Nor have Defendants produced any financial statements, bank statements, or other responsive documents related to their assets.

## ARGUMENT

14. Federal Rule of Civil Procedure 37 provides that, if a party fails to obey a discovery order, the Court "may issue further just orders," including an order "treating as contempt of court the failure to obey any order." Fed. R. Civ. P. 37(2)(A)(vii).

15. On this record, it is abundantly clear that Defendants have willfully violated the Court's January 13 Order. Rather than "produce all documents responsive to each of the Requests for Production," as ordered by the Court, they produced no documents by the Court-ordered deadline and, after the deadline passed, produced one document (an appraisal of a single property) that did not even remotely approach compliance with the January 13 Order. As explained above and in the Trust's earlier Motion to Compel, there is no question that additional documents exist and are responsive to the Trust's requests.

16. Accordingly, the Court should enter an order enforcing its January 13 Order and finding Defendants WCHC and WCMC in contempt. *See* Fed. R. Civ. P. 37(2)(A)(vii). Before finding Defendants in contempt, the Court should require Defendants, and their sole representative Defendant Natin Paul, to appear and show cause why they should not be held in civil contempt for violating the Court's January 13 Order.

17. Further, to encourage compliance with its January 13 Order, the Court should, at an appropriate time, order Defendants to pay the Clerk $10,000 per day until Defendants certify that they have "search[ed] for and . . . produce[d] all documents responsive to each of the Requests for Production served by Plaintiff on November 3, 2021." *See* ECF No. 55; *cf.* S.*E.C. v. Meta 1 Coin Trust*, 2020 WL 1931852, at *4 (W.D. Tex Apr. 21, 2020) (Pitman, J.); *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. Unit B 1980) ("A coercive, nonpunitive fine payable to the clerk of the court is an appropriate tool in civil contempt cases.").[2]

---

[2] Before imposing this civil contempt fine, "the Court must consider, with appropriate findings made in the record, '(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order.'" *Meta 1 Coin*, at *4 (quoting *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990)). This standard is easily satisfied here. First, non-compliance with the Court's January 13 Order is causing a significant delay in the production of documents and, in turn, significant harm by contributing to the delay in

4

18.     Given that Defendants WCHC and WCMC have refused to pay any portion of the pending $10,000,000 judgment, the Clerk should be permitted to recover the $10,000 daily payment from the entities' sole representative, Defendant Natin Paul.

19.     Finally, the Court should award the Trust reasonable expenses, including attorneys' fees, related to the filing of this Motion. *See* Fed. R. Civ. P. 37(a)(5). This award should be recoverable from Defendants and their counsel, as was the sanction award contained in the January 13 Order.

## **CONCLUSION**

For the reasons stated above, the Court should grant the Trust's instant Motion, enforce its January 13 Order, and find Defendants in contempt.

---

execution of a $10,000,000 judgment entered against WCHC and WCMC. Second, the sanction is likely to be effective, particularly if directed to include Defendant Paul, as the $10,000 daily fine is reasonable, but significant. Third, the contemnors have significant financial resources, with WCHC alone representing that its business currently has assets worth more than $1 billion. And, finally, absent this contempt finding there is no reason to believe Defendants' conduct will change. Indeed, they have already willfully violated this Court's January 13 Order.

>Respectfully submitted,
>
>**DLA PIPER LLP (US)**
>
>/s/ *Jonathan Haray*
>Brett Solberg (Bar No. 24070651)
>1000 Louisiana Street, Suite 2800
>Houston, Texas 77002
>T: 713.425.8482
>F: 713.300.6082
>brett.solberg@dlapiper.com
>
>Jonathan W. Haray (*Pro Hac Vice*)
>500 Eighth Street, NW
>Washington, DC 20004
>T: 202.799.4350
>F: 202.799.5340
>jonathan.haray@dlapiper.com
>
>Courtney Gilligan Saleski (*Pro Hac Vice*)
>Timothy Pfenninger (*Pro Hac Vice*)
>One Liberty Place
>1650 Market Street, Suite 5000
>Philadelphia, PA 19103
>T: 215.656.2431
>F: 215.656.5340
>courtney.saleski@dlapiper.com
>timothy.pfenninger@dlapiper.com
>
>*Attorneys for Plaintiff Barclays Trust*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

                                           */s/ Brett Solberg*
                                           Brett Solberg